IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN K. DELANEY,

                                    **Plaintiff,**

            v.                                                              CASE NO. 19-3221-SAC

**JEFF ZMUDA, et al.,**

                                    **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action. By order dated July 2, 2020, the Court directed Plaintiff to show cause why his Complaint should not be dismissed for failure to state a claim upon which relief may be granted, or, in the alternative, to file an amended complaint curing the deficiencies with the original complaint. *See* Memorandum and Order to Show Cause (MOSC), ECF No. 16. Before the Court is Plaintiff's Response (ECF No. 17) to the show cause order and an Amended Complaint (ECF No. 18). Also before the Court are three motions filed by Plaintiff.

## AMENDED COMPLAINT

In response to the MOSC, Plaintiff filed a Motion to Amend Complaint (ECF No. 18). The motion properly included his Proposed Amended Complaint as an attachment. The Court grants the motion and considers the Amended Complaint.

An amended complaint replaces any previously filed complaint and must be screened by the Court pursuant to 28 U.S.C. § 1915A(a). The Court must dismiss the Amended Complaint or portion thereof if the plaintiff has raised claims that are legally frivolous or malicious, that fail to

1

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

The only difference the Court discerns between the original Complaint and the Amended Complaint is the addition of the words "Equal Protection" to the first paragraph of the Complaint, to Count 2 on page 6, and to the supporting facts for Count 2 on page 7.  Therefore, the Court will determine whether Plaintiff has stated a claim for a violation of his Fourteenth Amendment right to equal protection.

**Equal Protection Claim**

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike."  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006)("Equal protection is essentially a direction that all persons similarly situated should be treated alike."); *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005).  An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991).  Therefore, in order to succeed on an equal protection claim, Plaintiff must allege that he was "similarly situated" to other inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests."  *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see also *Rider v. Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008)(citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)).  A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory

purpose" was a motivating factor in the disparate treatment alleged in the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012)(quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)). Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim. First, there is a presumption in favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003). Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect"); see also *Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

Plaintiff does not allege any difference in treatment. He fails to state an equal protection claim.

Because Plaintiff's Amended Complaint fails to state a claim on which relief may be granted, the Amended Complaint must be dismissed under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e).

**PLAINTIFF'S RESPONSE TO THE MOSC**

Plaintiff makes a number of arguments in response to the MOSC. He begins by arguing that "force was used against the Plaintiff, without cause." ECF No. 17, at 1. He alleges Inmate Booton was sprayed with pepper spray after he put a noose around his neck. He then removed the noose and the defendants "DIRECTLY SPRAYED both Booton AND Plaintiff four (4) more times." *Id.* at 2 (emphasis in original).

Plaintiff repeatedly states he was "directly sprayed." However, he also states that "every surface" of the cell was directly sprayed as well. He does not claim, and his supporting statements do not demonstrate, that the spray was purposely aimed at him. Given the size of a standard cell, virtually any use of a chemical agent would result in the exposure of Plaintiff to that agent. That does not mean that any defendant sprayed Plaintiff with the intent necessary to support an Eighth Amendment claim.

Plaintiff argues that beyond the first spray, additional pepper spray should not have been used against Booton because he had removed the noose. However, Booton had not complied with the order to come to the cell door to be restrained. Failure to comply with an order is grounds for the use of force in the Tenth Circuit. "[P]risoners cannot be permitted to decide which orders they will obey, and when they will obey them." *Redmond v. Crowther*, 882 F.3d 927, 938 (10th Cir. 2018) (internal quotation marks omitted). The case cited by Plaintiff is from a different circuit. Plaintiff's argument that force was used as a "malicious whim" is unjustified and unsupported.

Plaintiff claims he has demonstrated the defendants acted in a malicious and sadistic manner. He argues "the mere fact that the defendants had other options available to them" calls into question their intentions. Again, that is not the standard. "[T]o succeed on an Eighth Amendment claim [Plaintiff] must demonstrate more than 'a mere dispute over the reasonableness

of a particular use of force or the existence of arguably superior alternatives.' The evidence must support an inference that force was applied 'maliciously and sadistically for the very purpose of causing harm.'" *Stevenson v. Cordova*, 733 F. App'x 939, 943 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 322 (1986)).  Delaney said "response officers sprayed the entirety of a can of MK-9 into our cell in four separate 5 second bursts, despite having other options available.  When they unnecessarily emptied the entire can of MK-9, they not only sprayed Booton, but they also sprayed me, and every surface of our cell."  ECF No. 9-1 at 27.  This is not indicative of the required specific, malicious intent necessary to state a claim of excessive force.

Plaintiff provides a written response to a Form 9, Inmate Request to Staff Member, signed by Defendant Darter, whom he claims sprayed him "directly."  In his response, Darter says that he "had no problems with I/M Delaney #72292 during the use of force with I/M Booton #89337.  He was compliant and followed all orders."  ECF No. 8, at 8.  This is not consistent with Plaintiff's conclusory claims that Darter acted maliciously and with the very purpose of causing Plaintiff harm.

Plaintiff also filed a Form 9 directed to Unit Team Manager Patterson.  He asked Patterson if he knew of any situation which would justify the use of chemical agents against an inmate who poses no threat, is non-combative, and compliant.  Patterson responded, "No, outside of accidental exposure when application is being directed towards another offender that is being both combative and non-compliant."  ECF No. 8, at 11.  This is essentially what happened in Plaintiff's case.

The Tenth Circuit recently said:

> In assessing excessive-force claims, we have recognized that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself.... Therefore, review of a claim of the use of excessive force in a prison is to be deferential to the prison.... In particular, when prison officials must act to preserve internal order and discipline, we afford them wide-ranging deference... Although

> this deference does not insulate from review actions taken in bad faith and for no legitimate purpose, neither does it permit courts to freely substitute their judgment for that of officials who have made a considered choice.

*Thompson v. Orunsolu*, 798 F. App'x 288, 291 (10th Cir. 2020). Particularly in light of the deference afforded prison officials, the Court finds Plaintiff's allegations do not demonstrate the subjective prong of an excessive force claim.

Plaintiff further argues that some defendants are liable for failing to intervene or to refuse the order to spray. He did not include this claim in his Amended Complaint so it is not properly before the Court. Moreover, because the Court finds no constitutional violation for the act itself, failure to intervene to prevent the act is also not a constitutional violation.

Plaintiff argues Defendants Zmuda, Cline, and Perkins should be held liable even though they did not personally participate in the incident because they have a "duty and obligation" to ensure staff receive adequate training and appropriate policies are in place. ECF No. 17, at 7. However, Plaintiff provides no credible support for the allegation that staff were not adequately trained or that appropriate policies were not in place. While persons who did not personally participate in a civil rights violation may be liable under some circumstances, Plaintiff has not credibly pled such circumstances.

Finally, Plaintiff argues the defendants violated his right to due process by failing to respond in a timely manner to his grievance, property, and injury claims regarding the incident. He says his right to access the courts was violated as a result. As explained in the MOSC, Plaintiff has not stated a due process violation. As for a violation of his right to access the courts, Plaintiff did not include an access to the courts count in his Complaint or his Amended Complaint. However, even if he had done so, his allegations fail to state a claim.

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998)(citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996)("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing."). An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53.

Plaintiff attempts to meet the prejudice requirement by arguing he was unable to pursue a state habeas corpus action under K.S.A. 60-1501 based on the incident because Defendants Zmuda, Cline, and Perkins did not respond to his grievances, property claim, and injury claim in a timely manner. The primary problem with Plaintiff's argument is that the legal claim he was hindered in pursuing must be non-frivolous. Actions under K.S.A. 60-1501, et seq., challenge the constitutionality of an individual's restraint or the constitutionality of a prisoner's sentence. Plaintiff does not have a non-frivolous habeas claim based on the use of force incident.

## CONCLUSION

The Amended Complaint fails to cure the deficiencies with the original Complaint identified by the Court in its MOSC. Further, Plaintiff's response to the MOSC, while well-written and comprehensive, does not convince the Court that Plaintiff has stated an actionable claim for violation of his constitutional rights. Therefore, this action is dismissed.

## PENDING MOTIONS

In addition to the Motion to Amend Complaint (ECF No. 18), which is granted, Plaintiff has filed a motion for a temporary restraining order (ECF No. 13) and a motion for extension of

time (ECF No. 14). The motion for restraining order makes claims about retaliation, and Plaintiff mentions he may amend his Complaint to add a retaliation claim. However, his Amended Complaint does not include a claim for unconstitutional retaliation. Plaintiff's motion for an extension appears to have resulted from a misunderstanding of the docket sheet. Both motions are denied as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Amended Complaint is dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (ECF No. 18) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's other pending motions (ECF Nos. 13 and 14) are denied as moot.

**IT IS SO ORDERED.**

DATED: This 5th day of March, 2021, at Topeka, Kansas.

s/ Sam A. Crow
**SAM A. CROW**
**U.S. Senior District Judge**